Judge Nicholas
delivered the Opinion of the Court
the Chief Justice taking no part in the decision.
This is the same case twice formerly before this court, as it will be found reported, 5 Monroe, 212, and 5 J. J. Marshall, 211.
On the return of the cause to the circuit court, the defendants again obtained a verdict and judgment.
In addition to the testimony given on the former trial, as detailed in 5 J. J. Marshall, the defendants gave in evidence the deed from James S. Lemaster to Phillips, and further connected themselves with the Sturgus claim, by a bond from Phillips to one Bulger, of March, 1789, for the land in contest, and an assignment of that bond, by Bulger, to the Tiifords: which' supplied the defects in the proof pointed out in the opinion delivered and reported, 5 J. J. Marshall. They also gave in evidence a deed for the land, from Neal and wife, to Micajah and Elisha Cole, two of the lessors of the plaintiff, dated in June, 1817. it was admitted, “that Mrs. Neal, the patentee, was a native, and is yet a citizen of *87 Virginia ; that she married Neal in 1794 or 1795, being at the time, only fifteen years of age.” The acknowledgment of the deed from Neál and wife was taken before a clerk in this stale, but his certificate is, perhaps, not sufficient to pass more than a dower interest, and not her entire estate.
Instructions in that court, and questionnow to-be decided.
The savings íá the second section of the limitation law of 1814, have no application to the seven years law of 1S09.
Question reserved: — See tho following paragraphs.
Actions, upon the) title of husband Sr wife, to lands granted to her during coverture, are barred by the 7 years law.
On the case thus made out, the plaintiffs moved the court to instruct the jury, that they were not barred by the statutes of limitation. The court refused to give this instruction, and instructed the jury, that, if they believed the evidence, the plaintiffs were barred by the limitation act of 1809.
These instructions were refused, and given, on the ground that the deed to the Coles passed the estate to them during the life of Neal the husband ; and that they had no right to avail themselves of the 'disability of Mrs. Neal. As the suit was commenced in 1822, the seven years had not run since the conveyance to the Coles; but it had run against Neal, the husband, prior even to the date of that deed, provided both he and his wife were barred, or provided the statute would bar him alone, without also barring his wife.
It cannot properly he contended that Mrs. Neal was barred ; for though the patent issued to her during her coverture, and the land therefore cannot be said to have descended or been devised to her during coverture, and her right is not, therefore, such a one as would be saved to her for three years after her discoverture, by the second section of the act of 1814, yet according to the construction we give that section, it does not apply at all to the seven years limitation of 1809 ; so that it is immaterial, at present, to determine whether it does or does not take away all saving in favor of jemes coverts under the general limitation law of 1796, except where the,land shall have descended or been devised to them during their coverture.
Whether the husband may be so barred, that the land cannot be recovered in his life time, and can only be recovered after his death, when the right returns to. the wife, is a question which was waived when the case was formerly here. The court spoke of it as “ a question of *88 some nicety, in tiie construction “of our statutes of limitation, and which had not, as far as known, undergone an express decision.” It is presumed the court had forgotten the case of Gore vs. Marshall, 3 Litt. 469, where it was expressly decided, that a recovery by husband and wife, was not barred by seven years possession adverse to him, under the act of Í809. The same principle, under the act of 1796, appears also to have been recognised in McIntire vs. Funk, 5 Litt. 36, as to the right of entry; and in Crozier vs. Gano, 1 Bibb, 257; and 4 Bibb, 174, as to the action of detinue. The point, however, was disposed of in all those cases, without any discussion upon it, and without any appearance of attention having been directly called to it, as a debatable question, and, except in Gore vs. Marshall, an express adjudication upon it was not, perhaps, indispensably required. It may, therefore, be inferred, from what was said in 5 Monroe, that if those cases had been recollected, they would not have been considered as precluding or settling the question, and we are left at liberty to dispose of it, without the influence of any decided opinion on the part of our predecessors, the one way or the other. The apparent confliction between their opinions, has induced us to bestow some pains, in the pursuit of express authority upon the point; but we have not been able to find any case where it has been expressly mooted, either in this country or in England, and the English law writers are silent on the subject.
The saving in the act of 1809, is not materially different in its phraseology from that used in the statute of James, or in our statutes of 1796 and 1814. It is in these words : the limitation prescribed in this act, shall not extend to femes coverts &c.; “ but such persons shall be at liberty to institute such suits at any time, within seven years, after their disabilities are removed.”
There is nothing in this language, which does, of itself, constitute a saving in favor of the husband, so as to prevent his being barred. If there be such saving, it must result from the general principles of law, in order the better to secure and preserve the right of the wife. We are not aware of any principle that will so operate. *89 It may be that the interest of the wife would, in some cases, be promoted by a recovery in the life time of her husband ; thereby precluding the hazard of the loss of her right, by the loss of the evidence of it. But that is a description of interest not expressly protected by the words of the act, and the hazard referred to, may be siilliciently guarded against by a bill perpetuating the testimony. The saving was not intended to guard his interests against the effects of his own laches, but to save hers, so far as they were separate and disconnected from his. We do not perceive wherein their interests are so intimately blended, as indispensably, or even necessarily-, to require an enforcement of her right in his life time. Their interests are so far divisible, that he can maintain a suit in his own name alone, for the land, and can, by his separate deed, alienate .it cl tiring their joint lives. So where a recovery is'had in a suit brought by both, it is still for his sole benefit during bis life. -As, then, the recovery is for Ills sole benefit, and as his separate alienation bars a recovery on a demise in the names of both, no good reason is perceived, why fie should be permitted to avail himself of the saving in favor of the wife, to protect him against the effects of laches in this, more than in any other description of case.
A descent cast does not bar the right of entry of a feme covert, where the disseizin was during coverture, or in her infancy, if she marries, within age. Yet it does bar the right of the husband,orhusband and wife, during bis life— after which, it survives and reverts to her.
Question, upon the effect, after disooverturc, of oftho statute,on the rights of the feme, under a grant to her during coverture : not decided.
A descent cast does not bar the right of entry of a feme covert, where the disseizin takes place during coverture, or during her infancy, if she marries before her full age. Yet, it is well settled, that it does bar the right of entry of the husband, and takes away their joint right of action; but after his death, the wife, or her heirs, may enter notwithstanding his laches. Co. Lit. 248, a. This saving of the right of entry of a feme covert, against the effect of a descent cast, is so identical as to the quality of the right, and is based so exclusively upon the same principle as the saving in her favor in the statutes of limitation, that the harmony of the law, as a uniform system or science, seems necessarily to require, that her rights, and those of her husband, should bo placed upon the piccise same footing in both cases.— Every reason we can surmise, which would bar .the husband’s right of entry, whilst it remained still unexr *90 tinct jn the wife, in the one case, equally requires that it should be barred in the other also. In other words, if there is no sufficient reason for saving the right of the ilusf,ant^ f°r the sake °f the wife, in the one case, neither can there be any such in the other. The same rule or principle must regulate and control both.
Entertaining the opinion, that the right of Neal, the husband, would have been barred, provided it had still remained to him, it is unnecessary to notice the distinction upon which the circuit court appears to have acted, growing out of the alienation made by him to the Coles.
The judgment must be affirmed, with costs.