CHANCERY.

*Case* 104.

June 26.

Case stated.

# Bourne and wife *vs* Simpson.

## ERROR TO THE GARRARD CIRCUIT.

### *Divorces, Infancy, Dower, Alimony.*

JUDGE GRAHAM delivered the opinion of the Court.

JOHN W. Kennedy and Margaret Sartain inter-married in 1837, while they were both minors. Said Margaret was then the owner by descent of lands and slaves

and money, to the value of $7,000, and said John was the owner by devise from his father of property and money to the value of $60,000. One child still living was the fruit of this marriage. During the coverture said John W. Kennedy was seized in fee simple of a tract of land, which was afterwards, and during the coverture, regularly sold under execution, which issued on a judgment against Kennedy, and conveyance, made by the sheriff to the purchaser. Margaret did not join in the conveyance, or relinquish to the purchaser her dower in the land. The prospects of connubial bliss to this youthful pair were soon blighted. Their tempers and dispositions and habits were not congenial. Separation, repentance, sincere or pretended re-union, and separation again, several times took place. A bill for alimony and divorce was exhibited by Margaret by her next friend, in 1840, to which various amendments were made, injunctions, restraining, orders &c. granted until May 1842, when, by consent of the parties in Court, a decree was rendered for alimony, divesting the husband of all claim and interest legal or equitable, " in and to the real and personal estate" of said Margaret's father, and of a brother who had died without issue, which said John "has or may have" by virtue of said marriage, and investing said Margaret with the entire control of the same.

The decree also gave to her during life a negro man, woman and child, two beds, a French bed-stead, a horse, one hundred dollars, and a Piano, if it had not been sold, then its proceeds. It was "farther decreed that such chattels as said Margaret then had in possession, was vested in her." The bill was continued so far as it prayed for divorce. It was "further decreed and ordered by consent of the said Margaret in open Court, that the right, interests and property by the decree vested in her is accepted and received by her in lieu and satisfaction of all claims which she may have for dower, provision in alimony against her husband, or out of his estate of any kind whatever." She received and used all the property mentioned in the decree except the Piano, which or its value was not received by her. During

all this time she was an infant she having been born on the 8th June 1822 and attained full age on the 8th June 1843.

In March 1843 the husband filed his bill for divorce, and on 22d June 1843 a decree was rendered divorcing them from each other, the marriage contract cancelled, set aside and held for nought, and each restored to all the rights and privileges of unmarried persons. Mrs. Kennedy married McKee in May, 1844 and he having shortly afterwards died, she married Bourne her present husband and co-complainant in Sept. 1847.

Kennedy married a second wife in Jan. 1846, and died insolvent on 6th July 1847.

Bourne and wife have instituted this suit in chancery against Simpson the owner and occupant of the land sold under execution against Kennedy, during the coverture, praying a decree to have dower allotted to her in said tract.

In support of her claim it is urged that the divorce did not, and could not deprive her of dower, that any consent she may have given to the decree is not binding on her, she having been an infant at the time; and that no agreement after marriage can bar or defeat her right to dower, and that recording such agreement in Court gives it no additional force or efficacy.

We deem it to be unnecessary to enter into and discuss the distinction between divorces *avincula* and *amensa et thoro* because we entertain the opinion, that the divorces which the several acts of our legislature on that subject, authorise the Courts to grant, are such as dissolve entirely the marriage relation, as will be seen by adverting to their provisions.

By the 6th Section of the act of 1809, 1 Dig. 122, it is enacted that if there be just cause, " the Court shall pronounce a decree declaring the complainant divorced from his or her husband or wife; but such divorce shall not operate so as to release the offending party, who shall nevertheless remain subject to all the pains and penalties which the law prescribes against a marriage whilst a former husband or wife is living. The injured party is forbidden to contract marriage within two

years from the time of pronouncing such decree." The 7th section of that act, anthorises the Court pronouncing a decree of divorce to regulate, and order, the division of the estate real and personal, in such way as to them shall seem just and right, having due regard to each party and the children, if any, but not so as to compel from either · party a divestiture of the titles to he real estate."

The decree in this case divorced both parties, canceled, set aside and held for nought the marriage conract, and restored both husband and wife to all the rights and privileges of unmarried persons, and dissolved entirely the marriage relation, and provided for the wife such a distribution of property as the Chancellor under the circumstances of the case deemed proper to be lone.

The act of 1816 (1 *Dig.* 136,) enacts that no writ of error shall be sued out to reverse any decree of any Court granting a divorce from the marriage contract. Whether that decree be right or wrong, or be authorised r not, by the facts of the case, it cannot be disturbed y this court so far as the divorce alone is concerned. ¿. *Dana* 499, 7 *Dana* 182).

> *No writ of error lies to a decree granting a divorce; (5 Dana, 499; Ib. 184.)*

Independent of this objection to the complainants claim, it is perhaps proper to consider, another subject rged in argument. And that is, the provisions made r the wife, in the decree, and the binding efficacy of that decree upon her.

If the Court in rendering its decree does not make a suitable provision for the wife; if nothing at all, or too tle, or too much is given to her, as that portion of the ecree is not interdicted from appeal by the act referred o, this Court may at the instance of the party who complains of it, examine it and if wrong has been done, everse it, that is if the party complaining is not in some ay precluded from prosecuting the writ of error or ppeal. That portion of the decree of the Court below, which makes a disposition of the property is somewhat ambiguous, but we have come to the conclusion, that according to a fair construction of it, the provision made for the wife, was in lieu of any claim to dower

> *Though a decree against an infant feme covert is not valid but subject to reversal, it is not void; (3 Marshall 254e 282, ( but may be reversed if done in apt time, the error cannot b, rendered available collaterally, in another suit.*

An infant *feme covert* who, after coming of full age, acquiesced in a decree in her behalf for alimony, and which she, while in infancy, agreed to accept, and did accept in lieu of 'ower, denied ower in lands old under exe-:ution to pay tusband's debts luring cover-.ure.

in her husbands estate, and that the land in which she own claims dower is virtually embraced in it; and she thereby precluded from asserting dower thereon. It was rendered by her consent.

It is true she was an infant, and such consent was not binding on her. But the decree is not on that account void. (3 *Marshall*, 254. 282.) It was merely voidable, and if injustice was done her, might have been reversed, by seeking a reversal in apt time. She has, however, been of age since 1843, and since that time has been a widow. She has had ample time, and privilege to prosecute a writ of error, and, having failed to do so, she cannot now in a new and different suit effect her object, particularly after she has received and enjoyed the property decreed to her, by the chancellor, (except the Piano,) and still retains it; not only has she done this, but in using the privilege allowed her by the decree, she has again and again entered into the marriage relation. Having used all the privileges conferred on her by the decree, she is too late in complaining of its burdens, if any such exist.

Wherefore the decree is affirmed.

*Turner & Burton* for plaintiff; *Dunlap & Burditt* for defendant.

